UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-281-MOC
3:19-cr-41-MOC-DCK-1

| | |
|---|---|
| **MAURICE DANTRELLE BURRIS,** ) <br> ) <br> **Petitioner,** ) <br> ) <br> **vs.** ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> **Respondent.** ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1].

### I. BACKGROUND

Petitioner was charged in the underlying criminal case with: conspiracy to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); possession with intent to distribute 50 grams or more of methamphetamine and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Two); possession with intent to distribute 40 grams or more of fentanyl and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Three); possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, Count One, in violation of 18 U.S.C. § 924(c) (Count Four); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Five). [3:19-cr-41 ("CR") Doc. 3].

Petitioner pleaded guilty to Counts One, Two, and Five pursuant to a written Plea Agreement in exchange for the dismissal of the remaining counts. [CR Doc. 15 at ¶¶ 1, 2].

1

Petitioner admitted that he is, in fact, guilty as charged in Counts One, Two, and Five. [Id. at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…" and any Information pursuant to 21 U.S.C. § 851. [Id. at ¶ 4]. The Plea Agreement explains that the statutory minimum and minimum sentences as follows:

> Count One (1): a violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); a mandatory minimum term of not less than ten (10) years imprisonment and not more than life imprisonment, $10,000,000 fine, or both, and a term of supervised release of at least five (5) years;
>
> Count Two (2): a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); a mandatory minimum term of not less than ten (10) years imprisonment and not more than life imprisonment, $10,000,000 fine, or both, and a term of supervised release of at least five (5) years; and
>
> Count Five (5): a violation of 18 U.S.C. §§ 922(g)(1) and 924; a maximum term of ten (10) years imprisonment, $250,000 fine, or both, and a term of supervised release of not more than three (3) years.

[Id. at ¶ 5].

The parties agreed to jointly recommend that: the amount of mixture and substance containing a detectable amount of methamphetamine that was known to or reasonably foreseeable by Petitioner was approximately 748.3 grams of methamphetamine actual and 112.86 grams of fentanyl; the enhancements in U.S. Sentencing Guidelines §§ 2D1.1(b)(1) and (b)(12) apply; the plea is timely for purposes of acceptance of responsibility, if applicable; and if the Court determines from Petitioner's criminal history that the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal provision (U.S.S.G. § 4B1.4) of the U.S. Sentencing Guidelines applies, such provision may be used in determining the sentence. [Id. at ¶ 8]. The parties agreed that they would not seek any other enhancements or reductions to the offense level. [Id.]. The parties remained free to seek a departure or variance from the applicable guideline range at

2

sentencing. [Id.]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 16]. Petitioner expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id.

at ¶ 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> In 2017, both the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) investigated a Drug Trafficking Organization (DTO) thar trafficked bulk quantity of narcotics through the western District of North Carolina (WDNC), and the District of South Carolina (SCD). Agents identified Defendant Maurice Dantrelle Burris (Defendant), among others, as DTO members responsible for distributing bulk narcotics in Charlotte, North Carolina. In June 2018, law enforcement coordinated organized federal search warrants and arrests in both the SCD and WDNC. Defendant Maurice Dantrelle Burris was arrested in the WDNC.
>
> The defendant, Maurice Dantrelle Burris, from in or about 2017, to on or about February 19, 2019, in Mecklenburg County, within the western District of North Carolina, and elsewhere, did knowingly and intentionally conspire and agree with other persons, known and unknown to the Grand Jury, to possess with intent to distribute fifty (50) grams or more of methamphetamine (actual), and a mixture and substance containing forty (40) grams or, more of N-phenyl-N-[1-(2-phenylenthyl-4piperidinyl] propenamide, also known as fentanyl, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Specifically, **Maurice Dantrelle Burris trafficked approximately 748.3 g Actual Methamphetamine, and I12.86 grams of Fentanyl**.
>
> The defendant, Maurice Dantrelle Burris, on or about June 13, 2018, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, **did knowingly and intentionally possess with intent to distribute a controlled substance, that is, fifty (50) grams or more of actual methamphetamine**, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 8al(a)(1), and did aid and abet the same.
>
> The defendant, Maurice Dantrelle Burris, on or about June 13, 2018, in Mecklenburg County, within the Western District of North Carolina, having been previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year, **did knowingly and unlawfully possess a firearm in and affecting interstate commerce**, that is, an FN Model Five-Seven, 5.7 caliber pistol, in violation of Title 18, United States Code, Section 922(g)(1).

> **The defendant knew that he had been previously convicted of a crime punishable by more than one year**.

[CR Doc. 16 at 1-2] (paragraph numbers omitted; emphasis added).

On July 10, 2019, a Rule 11 hearing came before the Honorable David S. Cayer, United States Magistrate Judge. [CR Doc. 40]. Petitioner stated under oath that he received a copy of the Indictment, discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him. [Id. at 3-5]. He admitted that he is, in fact, guilty of Counts One, Two, and Five. [Id. at 8]. Petitioner agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights, and that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 6]. Petitioner acknowledged the rights he was waiving by pleading guilty, including the waiver of his appeal and post-conviction rights, and stated his understanding that the case would proceed directly to sentencing. [Id. at 7-8].

The Plea Agreement was summarized in open court. [Id. at 8-11]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 11-12]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 12]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. [Id.]. Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id. at 12-13].

5

The Presentence Investigation Report (PSR) scored the base offense level for Counts One and Two as 34 because the violation of §§ 846 and 841(a)(1) involved 748.3 grams of methamphetamine actual and 112.86 grams of fentanyl, for a total converted drug weight of 15,248.15 kilograms pursuant to U.S.S.G. § 2D1.1(a)(5). [CR Doc. 26 at ¶ 28]. Two levels were added because two firearms were located in the residence pursuant to § 2D1.1(b)(1), and two more levels were added because Petitioner maintained a residence for the purpose of manufacturing or distributing a controlled substance pursuant to § 2D1.1(b)(12). [Id. at ¶¶ 29-30]. This resulted in an adjusted offense level of 38.[1] [Id. at ¶ 34]. However, Petitioner qualifies as a career offender because he was at least 18 years old at the time of the instant offense of conviction, the instant offense of conviction is a crime of violence or a controlled substance offense, and Petitioner has at least two prior felony convictions for a crime of violence or a controlled substance offense, *i.e.*, possession with intent to distribute crack cocaine in proximity to a park or playground (07-GS-46-02701), distribution of cocaine base (10-GS-46-00015), and possession of cocaine base with intent to distribute in proximity to a park (10-GS-46-00016) pursuant to U.S.S.G. § 4B1.1(b)(1). [Id. at ¶ 43]. The career offender offense level remained a level 38. [Id.]. Petitioner provided the following written statement accepting responsibility:

> I get all the credit for where I am today. Beginning when I was around 16 yrs old, I made a bad decision and used drugs for the first time. It was a bad decision because I knew better. After that I became involved in a group that was moving drugs for sellers. That was a bad decision because I knew better. Even though I knew better, my involvement continued. Eventually I was associated with a group that was larger and involved more serious substances. I knew that some of the substances was meth. Although I didn't know exactly what each substance was I knew it was illegal and I knew it was dangerous and I knew better but I let myself be led by the wrong things in life. I am accountable and responsible for my participation and the harm it caused. I take full responsibility for where I am today.

---

[1] The adjusted offense level for Count Five was also 38. See [Id. at ¶¶ 35-37].

[Id. at ¶ 26]. Three levels were accordingly deducted for acceptance of responsibility, resulting in a total offense level of 35. [Id. at ¶¶ 44-46]. Petitioner had eight criminal history points a criminal history category of IV. [Id. at ¶ 54]. However, the criminal history category for career offenders is VI. [Id. at 55]. The section of the PSR addressing mental and emotional health indicates that Petitioner reported no history of mental or emotional problems, and that the investigation revealed no information to the contrary. [Id. at 64]. The section of the PSR addressing substance abuse indicates that the Petitioner began using marijuana at age 17, he began drinking alcohol at age 21, and he began using cocaine, oxycodone, hydrocodone, ecstasy, and methamphetamine in 2014. [Id. at 65]. The resulting advisory guideline range was 292 to 365 months of imprisonment. [Id. at ¶ 76].

    A sentencing hearing came before the Court on January 21, 2020. [CR Doc.41]. Petitioner stated under oath that, if he were asked the same questions from the Rule 11 hearing again, his answers would be the same, and that he was pleading guilty because he committed the offenses charged in Counts One, Two, and Five. [Id. at 3]. Petitioner stated that he went over the PSR with counsel and understood it. [Id.]. No objections to the PSR were outstanding. [Id.]. The parties agreed that Petitioner had a total offense level of 35, a criminal history category of VI, and an advisory guideline sentencing range of 292 to 365 months' imprisonment. [Id. at 5]. Defense counsel presented several witnesses to testify about Petitioner's history, including an incident where he was struck by a car at age six after which he seemed withdrawn and possibly affected him cognitively. [Id. at 12, 27]. Petitioner apologized to the courts, his family, and society. [Id. at 38]. The prosecutor noted that the plea negotiations resulted in the dismissal of a § 924(c) charge, and the Government's agreement not to file a § 851 Information. [Id. at 39]. The Court varied downward to an offense level of IV, and a range of 235 to 293 months' imprisonment, to better

7

represent the Petitioner's criminal history. [Id. at 48-49]. The Court sentenced Petitioner at the bottom of the new guideline range to 235 months' imprisonment (235 months for Counts One and Two and 60 months for Count Five, concurrent), followed by a total of five years of supervised release. [Id. at 50-51]. The Court asked defense counsel whether Petitioner has any drug problems or mental health issues. [Id. at 53]. Counsel explained that Petitioner "has battled addiction" and that he has experienced periods of withdrawal and depression. [Id. at 53-54]. The Court called custodial authorities' attention to Petitioner's history of substance abuse and that the possible presence of mental health issues so that he may be evaluated and treated appropriately while incarcerated, if necessary. [Id. at 54].

Petitioner filed a direct appeal, which was dismissed on the Government's Motion on March 12, 2021 pursuant to the Plaintiff's appellate waiver. See [CR Doc. 42].

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on June 10, 2022.[2] [Doc. 1]. He raises the following claims *verbatim*: (1) Defense counsel provided constitutionally inadequate representation of counsel during the pretrial and investigative stage of the proceedings; (2) Ineffective assistance of counsel: violation of due process in plea negotiations and plea agreement; (3) Defense counsel provided ineffective assistance of counsel by failing to offer mental health evidence in mitigation of the sentence sought by the United States; and (4) Defense counsel provided inadequate representation of counsel by incorrectly advising Petitioner that Petitioner would only receive a 12 year sentence if he pled guilty. [Doc. 1-1 at 5-9].

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution

---

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

8

or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court also determines that no response from the Government is required.

### III. DISCUSSION[3]

The Petitioner raises a number of claims of ineffective assistance of counsel with regards to the pre-plea representation, the guilty plea's voluntariness, and sentencing.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's

---

[3] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

**A.     Waiver**

Petitioner argues that counsel provided ineffective assistance before he pleaded guilty by failing to adequately investigate the case by, for instance, failing to file "vigorous pre-trial motions," obtain expert witnesses, "lay the groundwork for a favorable case or trial disposition," "obtain proper mitigation evidence for Petitioner based upon drug and mental health issues," and investigate Petitioner's prior convictions so that counsel could predict whether he would qualify as a career offender and provide an accurate sentencing range. [Doc. 1-1 at 5-6].

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. In order to be

10

competent to plead guilty, the trial court must determine that the defendant made a knowing and voluntary waiver of his trial rights. See Godinez v. Moran, 509 U.S. 389, 400-01 (1993).

Petitioner stated at the Rule 11 hearing that his mind was clear, he understood that he was there to enter a guilty plea, and that he was not under the influence of alcohol or drugs. [CR Doc. 40 at 3]. He stated that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. [Id. at 5-8, 11]. He further stated that he was pleading guilty because he was guilty of Counts One, Two, and Five, that he had fully discussed any possible defenses with counsel, that he was satisfied with counsel's services, and that the plea was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. [Id. at 8, 11-13]. The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's claims of pre-plea ineffective assistance of counsel were waived by Petitioner's knowing and voluntary guilty plea and they are dismissed and denied.

**B.     Involuntary Plea**

Petitioner appears to claim that his plea was involuntary because counsel failed to adequately investigate the case, including his mental state; misadvised him that he does not qualify as a career offender; and promised that he would receive a 12-year sentence if he pleaded guilty.[4]

---

[4] Petitioner does not appear to argue that he was incompetent to plead guilty. Had he raised such a claim, it would be denied because there was no reasonable cause to believe that he was incompetent, and the record reveals that he was able to meaningfully consult with his lawyer and had a rational and factual understanding of the proceedings. See 18 U.S.C. § 4241(a); Dusky v. United States, 362 U.S. 402 (1960); [CR Doc. 40 at 3, 5-8, 11-13]. Therefore, counsel was not deficient for failing to explore the Petitioner's competency, and there is no reasonable probability that the Court would have held a competency hearing if counsel had requested one. See Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir. 1990).

[Doc. 1-1 at 7-9].

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

These claims are conclusively refuted by the record. Petitioner admitted in the Plea Agreement and under oath at the Rule 11 hearing that: he understood the charges; he discussed the case and any possible defenses with counsel; he was satisfied with counsel's services; and he is guilty of Counts One, Two, and Five; that the plea was knowingly and voluntarily entered; and that he was not threatened, intimidated, forced, or promised anything other than the terms of his plea agreement, to induce him to plead guilty. [CR Doc. 40 at 3, 8, 12-13]; [CR Doc. 15]. He also acknowledged his maximum sentencing exposure for each count, that the sentence had not yet been determined, that any estimate of the likely sentence was a prediction rather than a promise, that the Court had the final discretion to impose any sentence up to the statutory maximum for

12

each count, and that the career offender enhancement may apply. [CR Doc. 15 at ¶¶ 5, 7-8]. In the Factual Basis, the Petitioner admitted that he knowingly and intentionally conspired to possess with intent to distribute 50 grams or more of methamphetamine actual, and 50 grams or more of fentanyl; that he intentionally possessed with intent to distribute those controlled substances and aided and abetted the same; and that he possessed a firearm while knowing that he had been previously convicted of a felony. [CR Doc. 16 at 1-2]. The Petitioner again acknowledged that he wanted to plead guilty and that he is, in fact, guilty of Counts One, Two, and Five at the sentencing hearing. [CR Doc. 41 at 2-3].

Petitioner's present conclusory and self-serving contentions that he was forced or coerced to plead guilty, did not understand his sentencing exposure or any other terms of the Plea Agreement, or was promised anything to induce him to plead guilty, are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

More specifically, Petitioner contends with regards to his mental condition and drug abuse that counsel failed to: "properly explore the issue of Petitioner's mental health and drug abuse issues, which obviously impacted Petitioner's behavior prior to arrest;" "arrange for a separate mental health examination of Petitioner to ascertain the nature of obvious mental deficiencies and drug and alcohol dependence which … [were] only minimally documented in the PSI;" and request an evidentiary hearing. [Doc. 1-1 at 7-8]. He speculates that a mental health examination would

13

have shown "diminished capacity of Petitioner's mental state…." [Id. at 8].

Petitioner's knowing and voluntary guilty plea excused counsel from further investigating the case or preparing for trial and Petitioner has failed to demonstrate that counsel performed deficiently in any way. See Willis, 992 F.2d at 490. Even if Petitioner had not waived this claim, it is too vague and conclusory to support relief.

An insanity defense requires the defendant to prove by clear and convincing evidence "that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). However, "[m]ental disease or defect does not otherwise constitute a defense." Id. "Insanity may be argued as a defense only if evidence supporting the assertion has been presented." United States v. Green, 468 F.2d 116, 118 (4th Cir. 1972). An attorney who reasonably determines that presenting an insanity defense is futile and chooses not to pursue it is not ineffective. See Knowles v. Mirzayance, 556 U.S. 111, 125 (2009) (counsel was not ineffective for withdrawing an insanity defense after reasonably concluding that the defense would "almost certainly lose"); United States v. Cintron, 163 F.3d 599 (4th Cir. 1998) (counsel was not ineffective for determining that the defendant could not credibly assert an insanity defense). To show prejudice in this context, a petitioner has to show a reasonable probability that counsel could have established that he was "not guilty by reason of insanity." Mann v. United States, 66 F. Supp. 3d 728, 739 (E.D. Va. 2014) (quoting Becton, 920 F.2d at 1194).

The Plaintiff's vague and unsupported allusions to an unidentified mental health condition and to his drug abuse are too conclusory to warrant relief. Petitioner has not come forward with any evidence of a mental health condition or drug abuse that would have reasonably supported an insanity defense. See generally United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (vague

14

and conclusory allegations in a § 2255 petition may be disposed of without any further investigation).

Moreover, Petitioner has failed to demonstrate prejudice. He suggests that he would not have pleaded guilty had counsel performed effectively. [Doc. 1-1 at 7-8]. This conclusory argument is rejected. The Plea Agreement was extremely favorable in that it led to the dismissal of two serious charges, including a § 924(c) violation which would have carried a consecutive sentence, prevented the Government from filing a § 851 Information, and led to a three-level reduction in the offense level for acceptance of responsibility. There was strong evidence of Petitioner's guilt as outlined in the Factual Basis and acknowledged by Petitioner in open court. It would not have been objectively reasonable, under these circumstances, for the Petitioner to have proceeded to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); Fugit, 703 F.3d at 259 (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

Accordingly, the Petitioner's claims that his plea was rendered involuntary by ineffective assistance of counsel are dismissed and denied.

C.  **Sentencing**

Finally, Petitioner claims that counsel was ineffective for failing to arrange for a mental health examination to "ascertain the nature of obvious mental deficiencies and drug and alcohol dependence," and for failing to "offer mitigation evidence that showed that Petitioner would have benefitted more from extensive mental health and drug treatment rather than a long prison sentence." [Doc. 1-1 at 8].

15

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

Here, the PSR referred to Petitioner's history of drug abuse and witnesses at the sentencing hearing referred to possible emotional and cognitive issues. Petitioner speculates that a mental health examination would have uncovered mitigating evidence in this regard. However, a motion for downward departure based on mental health status is only warranted where mental and emotional conditions are present "to such a degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Petitioner has not come forward with any such evidence and none appears in the record.

Nor has the Petitioner demonstrated prejudice. His speculative contention that he would have received a lower sentence but for counsel's allegedly deficient performance is vague and conclusory. See Dyess, 730 F.3d at 359 (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court). He has demonstrated no reasonable probability that he would have received a lower sentence than the downward variance he received, had counsel performed differently in any way. Accordingly, the Petitioner's claim that counsel was ineffective with regards to sentencing is dismissed and denied.

IV. **CONCLUSION**

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

16

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: July 13, 2022

Max O. Cogburn Jr
United States District Judge